[Cite as *Equip. Engine Fin. Servs. Co., L.L.C. v. Mike's Serv. Ctr., Inc.*, 2016-Ohio-3312.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

EQUIPMENT ENGINE FINANCIAL
SERVICES COMPANY, LLC

    Appellees

    v.

MIKE'S SERVICE CENTER, INC., et al.

    Appellants

C.A. No.     27837

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2013-11-5421

DECISION AND JOURNAL ENTRY

Dated: June 8, 2016

MOORE, Presiding Judge.

{¶1} Appellants Mike's Service Center, Inc. and Mike Miktarian appeal from the entry granting Third-Party Defendant-Appellee First Data's motion for summary judgment. We affirm in part and reverse in part.

I.

{¶2} In May 2012, Mike's Service Center, Inc. entered into a loan agreement with First Atlantic Funding, LLC, captioned "Future Receivables Sale Agreement[.]" In January 2013, Mike's Service Center, Inc. entered into a similar loan agreement with Rapid Capital Funding II, LLC ("Rapid Capital"). That agreement provided that Mike's Service Center, Inc. would receive $125,000 and would pay back $165,000 over time. In addition, $40,900 of the $125,000 was to be used to pay off the remainder of the money owed under the agreement with First Atlantic Funding, LLC. Mr. Miktarian personally guaranteed the loan with Rapid Capital.

{¶3} Mike's Service Center, Inc. made payments to Rapid Capital via Mike's Service Center, Inc.'s business bank account. In October 2013, Mike's Service Center, Inc. suspended deposits to the business bank account. Thereafter, Rapid Capital advised First Data, the processor for the merchant account of Mike's Service Center, Inc.'s through which Mike's Service Center, Inc.'s credit card sales were processed, via a letter, that Mike's Service Center, Inc. had defaulted on its agreement with Rapid Capital, that a UCC-1 was filed securing the receivables as collateral, and requested that First Data hold all funds processed by Mike's Service Center, Inc. First Data sent Mike's Service Center, Inc. a letter concerning Rapid Capital's claimed interest in the funds and indicated First Data would place the merchant account on hold status and place the processed funds into a reserve account until directed otherwise by a court order or the parties.

{¶4} In November 2013, Equipment Engine Financial Services Company, LLC filed a complaint against Mike's Service Center, Inc. and Mr. Miktarian seeking to recover under the Rapid Capital agreement for Mike's Service Center, Inc.'s failure to pay and Mr. Miktarian's failure to pay under his personal guarantee.[1] In December 2013, Mike's Service Center, Inc. and Mr. Miktarian answered the complaint, filed counterclaims against Equipment Engine Financial Services Company, LLC, and filed a third-party complaint against Rapid Capital, First Atlantic Funding, LLC, and First Data. With respect to First Data, Mike's Service Center, Inc. and Mr. Miktarian alleged that First Data wrongfully converted approximately $12,000 of Mike's Service Center, Inc.'s funds, breached its contract with Mike's Service Center, Inc., and was unjustly

---

[1] The complaint was later amended to substitute Rapid Capital for Equipment Engine Financial Co., LLC as the Plaintiff.

enriched in the amount of $12,000. In the breach of contract claim, Mike's Service Center, Inc. and Mr. Miktarian alleged that Mike's Service Center, Inc. had a contract with First Data for it to process Mike's Service Center, Inc.'s credit card sales and that First Data's actions in retaining the $12,000 and in refusing to process credit card sales constituted a breach of contract. Additionally, Mike's Service Center, Inc. and Mr. Miktarian sought a declaratory judgment. Mike's Service Center, Inc. and Mr. Miktarian did not attach to the third-party complaint a copy of the contract that they alleged First Data breached.

{¶5} Mike's Service Center, Inc. and Mr. Miktarian also moved for a temporary restraining order to enjoin First Data from continuing to hold funds and preventing Equipment Engine Financial Services Company, LLC and Rapid Capital from interfering with First Data's processing of Mike's Service Center, Inc.'s credit card sales. Ultimately, the trial court granted the motion for a temporary restraining order. Thereafter, First Data released the approximately $12,000 it was holding to Mike's Service Center, Inc.

{¶6} After First Data failed to file an answer to the third-party complaint, Mike's Service Center, Inc. moved for default judgment. First Data then moved for leave to plead. It argued that leave was appropriate because First Data mistakenly understood that Equipment Engine Financial Services Company, LLC and/or Rapid Capital would be answering on First Data's behalf. The trial court granted First Data leave to plead and denied Mike's Service Center, Inc.'s motion for default judgment against First Data.

{¶7} First Data moved for summary judgment on Mike's Service Center, Inc.'s and Mr. Miktarian's claims against it. In its motion, First Data argued that it was entitled to summary judgment because it did not deprive Mike's Service Center, Inc. of credit card processing services, First Data returned to Mike's Service Center, Inc. and Mr. Miktarian the

disputed funds (approximately $12,000), and Mike's Service Center, Inc.'s credit card processing agreements with Huntington National Bank and Huntington Merchant Services, LLC (collectively "Huntington") and PNC Bank, N.A. and PNC Merchant Services Company (collectively "PNC") barred claims based on delay in receipt of funds, claims for lost profits, lost revenues, lost business opportunities, and consequential or indirect damages. First Data pointed to language in the Huntington and PNC Program Guides that accompanied the agreements which indicated neither "we" nor "our affiliates" were liable under any legal theory for the above mentioned damages and that "[w]e will not be liable for any delays in receipt of funds[.]" First Data did not mention in its initial motion that it was a third-party beneficiary to these contracts.

{¶8} In opposition, Mike's Service Center, Inc. and Mr. Miktarian neither confirmed nor denied that the Huntington and PNC agreements governed their relationship with First Data. However, they did acknowledge that First Data was the processor of the merchant account for Mike's Service Center, Inc. through which its credit card sales were processed, and that Mike's Service Center, Inc. did have use of First Data's credit card processing service during the hold. However, Mike's Service Center, Inc. and Mr. Miktarian argued that if they would have processed credit card sales through First Data they would have gone out of business because they would not have had access to the funds due to the hold. Thus, Mike's Service Center, Inc. sought to obtain the services of another processor; however, its bank informed it that it could not switch processors as long as Rapid Capital alleged it was still owed money from Mike's Service Center, Inc. Absent using a processor, Mike's Service Center, Inc. asserted that its customers could not use credit cards at the pumps, resulting in lost business. Nonetheless, Mike's Service Center, Inc. did process some other portion of its credit card sales without a credit card

processor. However, using this method resulted in Mike's Service Center, Inc. incurring "substantial" fees.

**{¶9}** Thus, Mike's Service Center, Inc. and Mr. Miktarian argued that the return of the funds held by First Data did not fully compensate them for the damages caused. Additionally, they argued that First Data was not a party to the PNC and Huntington agreements and also was not a third-party beneficiary. Further, Mike's Service Center, Inc. and Mr. Miktarian maintained that the limitation of liability clauses in the agreements were unconscionable and therefore unenforceable.

**{¶10}** First Data filed a reply arguing that it could not be held liable for Mike's Service Center, Inc.'s and Mr. Miktarian's decision not to use its services to avoid the hold. Additionally, First Data pointed to a different provision in the PNC and Huntington Program Guides, which, according to First Data, indicated that it was a third-party beneficiary. Finally, First Data argued that the limitation of liability provisions were not unconscionable.

**{¶11}** The trial court found that "First Data did not breach its agreement by placing a hold on the funds once it was notified by Rapid [Capital] that [Mike's Service Center, Inc.] had assigned a security interest in those funds to Rapid [Capital]." The trial court also concluded summary judgment in favor of First Data was warranted on the unjust enrichment and conversion claims. Finally, the trial court found the claim for declaratory judgment to be moot. The trial court included Civ.R. 54(B) language in its judgment entry.

**{¶12}** Mike's Service Center, Inc. and Mr. Miktarian have appealed, raising two assignments of error for our review.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

{¶13} Mike's Service Center, Inc. and Mr. Miktarian argue in their first assignment of error that the trial court erred in granting summary judgment to First Data.

{¶14} We review an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶15} Pursuant to Civ.R. 56(C), summary judgment is proper only if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." *Id.* at 293. If the moving party fulfills this burden, then the burden shifts to the nonmoving party to prove that a genuine issue of material fact exists. *Id.*

Breach of Contract

{¶16} With respect to Mike's Service Center, Inc.'s and Mr. Miktarian's claim for breach of contract, ultimately, the trial court concluded that "First Data did not breach its

agreement by placing a hold on the funds once it was notified by Rapid [Capital] that [Mike's Service Center, Inc.] had assigned a security interest in those funds to Rapid [Capital]."

{¶17} Unfortunately, we are uncertain what "agreement" the trial court concluded was not breached, or how it determined the agreement was not breached, as there is no contract in the record to which Mike's Service Center, Inc. and Mr. Miktarian have pointed as the contract that they argue was breached. In evaluating the arguments of the parties and in reviewing the record, this Court was struck by the fact that Mike's Service Center, Inc. and Mr. Miktarian never pointed to any contract or agreement that they believed governed their relationship with First Data. In fact, Mike's Service Center, Inc. and Mr. Miktarian attached to its answer, counterclaim, and third-party complaint only the loan agreements Mike's Service Center, Inc. entered into with First Atlantic Funding and Rapid Capital. It did not attach any contract in which it and First Data were parties, nor did it attach the Huntington or PNC agreements or Program Guides relied upon by First Data in support of its motion for summary judgment. Nonetheless, the third-party complaint alleged that Mike's Service Center, Inc. "ha[d] a contract with * * * First Data for First Data to process * * * Mike's Service Center, Inc.'s credit card sales" and First Data's actions of retaining the $12,000 and "in refusing to process any further credit card sales of * * * Mike's Service Center, Inc. constitute[d] a breach of contract." Those allegations, viewed in  a light most favorable to Mike's Service Center, Inc. and Mr. Miktarian suggest that a contract existed between Mike's Service Center, Inc. and First Data and that that agreement was breached.

{¶18} Given the foregoing, it is difficult for this Court to conclude that First Data met its burden of demonstrating that it was entitled to summary judgment on the breach of contract claim. While undoubtedly Mike's Service Center, Inc.'s and Mr. Miktarian's failure to point to,

or attach, a contract that they believed was breached could prove fatal to their claim, such was not the basis upon which First Data moved for summary judgment. First Data argued it was entitled to summary judgment because it did not fail to process the credit card sales, it returned the money it was holding, and that the limitations of liability clauses contained in the Huntington and PNC Program Guides, to which it was not a party, barred the third-party claims. However, Mike's Service Center, Inc. and Mr. Miktarian never asserted that First Data breached the Huntington and PNC agreements or Program Guides or that those agreements applied in any way to their claims. While it seems First Data believed that Mike's Service Center, Inc. and Mr. Miktarian were asserting that the Huntington and PNC agreements governed their relationship with First Data, we have been unable to locate anything in the record filed by Mike's Service Center, Inc. and Mr. Miktarian that would substantiate that belief. Thus, it is unclear what significance those agreements have in this case.

{¶19} Here, First Data failed to establish the absence of a genuine issue of material fact with respect to the breach of contract claim. First Data never asserted that there was not a contract between it and Mike's Service Center, Inc. and a contract between those parties is not in the record before us. There remains a genuine issue of material fact with respect to what agreement, if any, is the subject of Mike's Service Center, Inc.'s and Mr. Miktarian's breach of contract claim.

Conversion

{¶20} With respect to the conversion claim, the trial court determined that, "even assuming that First Data should have ignored Rapid[ Capital's] notice of its security interests in the funds, * * * Mike's [Service Center Inc.'s] claims for lost business and lost profits were the result of [the] ultimate decision not to accept credit cards using an alternate method because of

the substantial fees [it] would have incurred." Further, the trial court found that "the express terms of Mike's [Service Center, Inc.'s] agreement with Huntington and PNC bar claims for lost profits, lost revenues, lost business opportunities, consequential or indirect damages, and delayed receipt of funds caused by a third party[.]"

{¶21} First we note that the trial court's recitation of some of the facts in its judgment entry is inaccurate. The trial court noted in its judgment entry that Mike's Service Center, Inc. "declined accepting any [credit] card transactions," and in discussing the conversion claim, the trial court stated that the "claims for lost business and lost profits were the result of [its] ultimate decision not to accept credit cards using an alternate method because of the substantial fees [it] would have incurred."

{¶22} While it does appear from the record that Mike's Service Center, Inc. stopped accepting credit cards at the pumps (allegedly because it could not obtain another processor to avoid the hold and could not process credit cards at the pump without a processor) it does not appear that it stopped accepting credit cards all together. Mike's Service Center, Inc.'s and Mr. Miktarian's responses to interrogatories, submitted in support of First Data's motion for summary judgment, state that Mike's Service Center, Inc. "had to use a Square and obtain an account with Verizon to process credit card sales. Due to the additional monthly phone fees, plus 2.75% in credit card fees * * *, [Mike's Service Center, Inc.] estimate[s] that it paid an additional 1.05% in credit card fees during this time." Additionally, First Data submitted documents from Huntington National Bank and PNC Bank, N.A. that indicate Mike's Service Center, Inc. did submit credit card transactions for processing during the period of the hold. Thus, to the extent any of the trial court's conclusions relied on its misperception of the facts, its conclusions are likewise troubling.

**{¶23}** Ultimately, however, the trial court concluded the conversion claim was barred in light of the limitations of liability clauses in the PNC and Huntington Program Guides. However, as discussed above, it is not clear that any of Mike's Service Center, Inc.'s and Mr. Miktarian's claims rely on those agreements and it is unclear at this time what significance they play in this litigation. Even assuming the allegations of the conversion claim would implicate the Huntington and PNC agreements, we cannot say that First Data has demonstrated the absence of a genuine issue of material fact. While First Data has argued that it is a third-party beneficiary to the Huntington and PNC agreements, First Data has failed to establish the absence of a genuine issue of material fact on that point.

**{¶24}** First Data points to section 38.8 in the Huntington Program Guide and 31.8 in the PNC Program Guide along with the glossaries to support its contention. Both the PNC and Huntington Agreements provide that:

> Our respective Affiliates and any Persons we use in providing the Services are third[ -]party beneficiaries of this Agreement and each of them may enforce its provisions as [if] it was a party hereto. Except as expressly provided in this Agreement, nothing in this Agreement is intended to confer upon any Person[2] any rights or remedies, and the parties do not intend for any Persons to be third-party beneficiaries of this Agreement.

**{¶25}** First Data argues that it qualifies as a "Person[]" used to provide "Services." Under the PNC and Huntington Agreements, "Person" is defined as "[a] third party individual or entity, other than the Client, Processor or Bank." "Services" is defined under the PNC Program Guide to be "[t]he activities undertaken by Processor and/or Bank, as applicable, to authorize, process and settle all United States Dollar denominated Visa, MasterCard and Discover transactions undertaken by Cardholders at Client's location(s) in the United States, and all other

---

[2] The PNC Agreement includes the following additional language after the word "Person" and prior to the phrase "any rights or remedies[:]" "or entity other than the parties[.]"

activities necessary for Processor to perform the functions required by this Agreement for Discover and all other Cards covered by this Agreement." The Huntington Program Guide's definition of "Services" is nearly identical.

{¶26} First Data has submitted no evidence that it is a "Person" Huntington and PNC used to provide "Services" under the PNC and Huntington Agreements. While the record does establish that First Data did supply credit card processing services to Mike's Service Center, Inc. and that Mike's Service Center, Inc. had agreements with PNC and Huntington concerning credit card processing services, that does not require the conclusion that First Data was acting under the PNC and Huntington agreements. First Data never submitted any affidavits or other evidentiary materials evidencing that it was providing "Services" for Huntington and PNC under those particular agreements. Instead, First Data has only argued that it qualifies as a "Person" providing "Services."

{¶27} As the trial court's basis for granting summary judgment to First Data on the conversion claim was that the claim was barred under the limitation of liability clauses in the PNC and Huntington Program Guides, and we conclude issues of material fact remain with respect to First Data's ability to rely on the provisions therein, we determine that the trial court erred in granting summary judgment on that basis. Accordingly, we need not determine whether those provisions are unconscionable.

Unjust Enrichment

{¶28} With respect to the unjust enrichment claim, the trial court determined the funds that were held by First Data were released to Mike's Service Center, Inc. and that there was no evidence First Data benefited from holding the disputed funds. Accordingly, it granted summary judgment to First Data on the unjust enrichment claim.

**{¶29}** "Unjust enrichment consists of three elements: (1) a benefit conferred by the plaintiff upon the defendant, (2) knowledge by the defendant of the benefit, and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." (Internal quotations and citations omitted.) *NuFloor Sys. v. Precision Environmental Co.,* 9th Dist. Summit No. 25432, 2011-Ohio-3669, ¶ 22. "Not only must Appellant[s] suffer a loss, but Appellee must have received a gain." *Zeck v. Sokol,* 9th Dist. Medina No. 07CA0030-M, 2008-Ohio-727, ¶ 19, quoting *Coyne v. Hodge Constr., Inc.,* 9th Dist. Medina No. 03CA0061-M, 2004-Ohio-727, ¶ 5.

**{¶30}** Mike's Service Center, Inc. and Mr. Miktarian asserted in their third-party complaint that the retention of the $12,000 by First Data was unjust. As there is no dispute that First Data has returned the money, even assuming Mike's Service Center, Inc. and Mr. Miktarian had a valid claim for unjust enrichment, any claim would be rendered moot by the return of the funds. There is no evidence that First Data otherwise benefited from holding the funds.

**{¶31}** Accordingly, we conclude the trial court did not err in granting summary judgment to First Data on the unjust enrichment claim.

**{¶32}** Mike's Service Center, Inc. and Mr. Miktarian's first assignment of error is sustained in part, and overruled in part.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING FIRST DATA PERMISSION TO FILE ITS LATE ANSWER INSTANTER.

**{¶33}** Mike's Service Center, Inc. and Mr. Miktarian argue in their second assignment of error that the trial court abused its discretion in allowing First Data to file its untimely answer instanter.

**{¶34}** "Civ.R. 6(B)(2) explains that the trial court may 'upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect[.]'" *Univ. of Akron v. Mangan,* 9th Dist. Summit No. 24167, 2008-Ohio-4844, ¶ 9, quoting Civ.R. 6(B)(2). "A Civ.R. 6(B)(2) determination lies within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion." *Mangan* at ¶ 9. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶35}** "In determining whether neglect is excusable or inexcusable, this Court must take into consideration all the surrounding facts and circumstances, and must be mindful of the admonition that cases should be decided on their merits, where possible, rather than procedural grounds." *Mangan* at ¶ 10. "Although excusable neglect cannot be defined in the abstract, the test for excusable neglect under Civ.R. 6(B)(2) is less stringent than that applied under Civ.R. 60(B)." *Id.,* quoting *State ex rel. Lindenschmidt v. Butler Cty. Bd. of Commrs.,* 72 Ohio St.3d 464, 466 (1995).

**{¶36}** Mike's Service Center, Inc. and Mr. Miktarian filed their third-party complaint on December 5, 2013. On December 10, 2013, Mike's Service Center, Inc. and Mr. Miktarian filed a motion for a temporary restraining order. First Data was served with the third-party complaint on December 17, 2013. First Data asserts, and Mike's Service Center, Inc. and Mr. Miktarian do not dispute, that First Data's answer was due 28 days later, or by January 14, 2014. After First Data failed to timely file an answer, Mike's Service Center, Inc. moved for default judgment against First Data on February 10, 2014. First Data sought leave to plead pursuant to Civ.R. 6(B) on February 26, 2014.

**{¶37}** In the motion, First Data asserted that, when it received the motion for a temporary restraining order and the third-party complaint, First Data promptly contacted the attorney for Rapid Capital and/or Equipment Engine Financial Services Company, LLC that had requested that First Data place a hold on the funds. The attorney advised First Data that Equipment Engine Financial Services Company, LLC and/or Rapid Capital would defend and indemnify First Data in the action. While no answer was filed on its behalf, First Data maintained that it was unaware of that until it received the motion for default judgment. At that point, First Data contacted the same attorney[3] for Rapid Capital and/or Equipment Engine Financial Services Company, LLC, and this time was advised that the entities would not be providing a defense for First Data; although First Data would be indemnified. First Data next requested that Mike's Service Center, Inc.'s counsel withdraw the motion for default; however, counsel refused to do so. In support of the motion, First Data submitted the affidavit of the senior legal analyst for First Data which mirrored the assertions in the motion.

**{¶38}** First Data additionally argued that the delay in filing the answer was minimal and that Mike's Service Center, Inc. and Mr. Miktarian would not be prejudiced by the delay, particularly because First Data complied with the trial court's order concerning the release of the $12,000, even before it sought leave to answer. Mike's Service Center, Inc. and Mr. Miktarian opposed the motion arguing that the circumstances did not demonstrate excusable neglect.

**{¶39}** Given the particular circumstances of this case, we cannot say the trial court abused its discretion in allowing First Data leave to plead. While the more prudent course of action would have been for First Data to check to ensure that an answer had been filed on its

---

[3] This attorney is not listed as one of the attorneys that represented Equipment Engine Financial Services Co., LLC or Rapid Capital in the litigation in the trial court.

behalf, we cannot say that the trial court's conclusion that First Data's actions amounted to excusable neglect was unreasonable or arbitrary, particularly when the trial court must have believed that First Data reasonably thought that it would be defended in the action by another party. *See Brooks v. Progressive Ins. Co.,* 9th Dist. Summit No. 16639, 1994 WL 376768, *2 (July 20, 1994) (noting that a trial court's evaluation of the facts and circumstances must be afforded deference). While there are facts that do not weigh in First Data's favor, such as the fact that it did not file for leave to plead until after a motion for default judgment was filed, *see id.*, and the length of time that passed between when the answer was due and when leave was sought and between when the motion for default judgment was filed and when the motion for leave was filed, *see id.* at *2-3, we nonetheless conclude that the trial court did not abuse its discretion. *See Scott v. McCluskey,* 9th Dist. Summit No. 25838, 2012-Ohio-2484, ¶ 3, 6, 9 (affirming trial court's decision to allow leave to plead even though a motion for default judgment was filed before the motion for leave to plead and a similar passage of time elapsed between the answer due date and the filing of the motion for leave to plead and between the filing of the motion for default and the filing of the motion for leave to plead).

**{¶40}** Mike's Service Center, Inc.'s and Mr. Miktarian's second assignment of error is overruled.

### III.

**{¶41}** The judgment of the trial court is affirmed in part, and reversed in part. The trial court erred in granting summary judgment to First Data on Mike's Service Center, Inc.'s and Mr. Miktarian's claims for breach of contract and conversion. Thus, Mike's Service Center, Inc.'s and Mr. Miktarian's first assignment of error is sustained in part. However, their second

assignment of error is overruled. The matter is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

HENSAL, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellants.

MARK SHERIF, Attorney at Law, for Appellee.

ORVILLE REED, III, Attorney at Law, for Appellee.